UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOLITA TACKETT,

    Plaintiff,

    v.

OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION, et al.,

    Defendants.

Case No. 2:10-cv-979
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (ECF No. 12), Plaintiff's Memorandum Contra to Defendants' Motion for Judgment on the Pleadings (ECF No. 17), and Defendants' Reply Memorandum in Support of Motion for Judgment on the Pleadings (ECF No. 18). For the reasons that follow, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings.

**I. Background**

The following facts are taken from the complaint and the documents attached to the complaint.

Plaintiff Jolita Tackett is an employee of the Ohio Department of Rehabilitation and Correction, Madison Correctional Institution ("ODRC"). Plaintiff alleges that she began being harassed at work in December 2008. Plaintiff avers that she received sexually harassing telephone calls at work that she believes were made by her coworkers. Plaintiff reported these

calls but was told by her supervisor that there was no way to know who made the calls so there was nothing ODRC could do about them.

Plaintiff alleges that during roll call in front of several other coworkers she was subjected to comments from her coworkers, Corrections Officer ("C.O.") Brad Foulk, C.O. Christopher Neininger, and C.O. Melvin Williams, concerning her work ethic and ability. Further, Plaintiff claims that C.O. Foulk smacked her on her buttocks at a Wal-Mart store one evening after work.

Plaintiff submitted numerous incident reports to ODRC concerning the perceived harassment and spoke to ODRC's Equal Employment Opportunity ("EEO") Administrator. Plaintiff contends that none of the issues about which she complained were resolved and the harassment became worse. Plaintiff claims that she received disciplinary reprimands for minor incidents that her male coworkers did not receive for the same behavior. Plaintiff believes she was treated unfairly because she is a female.

Plaintiff took a leave of absence from her job from February 4, 2010 through April 21, 2010. Plaintiff contends that the leave of absence was necessary because of the stress caused by the workplace harassment. During the leave time, Plaintiff saw a psychotherapist and a psychiatrist.

Plaintiff alleges that she filed a complaint with the EEO Department of ODRC's Human Resources Department. The EEO Department investigated the complaint. Plaintiff alleges that during the investigation, she was told that she may have "brought these [harassing] incidents on herself and that it '. . . was something that can be expected in a male environment.' " (ECF No. 1 at ¶ 23.) The EEO Department concluded the investigation and issued a "No Probable Cause" letter indicating that there was insufficient evidence to support Plaintiff's claims. *Id.* ¶24.

On October 29, 2010, Plaintiff filed the instant action, naming as defendants the ODRC, C.O. Foulk, C.O. Neininger, and C.O. Williams ("Defendants"). Defendants have moved to have all claims dismissed. That motion is ripe for review.

## II. Standard

Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In her memorandum in opposition, Plaintiff contends that Defendants erred in filing their motion under Rule 12(c) "and should instead have filed a Motion to Dismiss, based on the tenor and substance of arguments they submitted." (ECF No. 17 at 2.) A motion for judgment on the pleadings, however, is simply a motion to dismiss that is filed after the party has filed a responsive pleading. Here, Defendants filed their answer on April 8, 2011 (ECF No. 9), thus a motion to dismiss under Rule 12(b)(6) was unavailable to them. The proper vehicle for Defendants' to request dismissal is indeed a motion under Rule 12(c).

The Court reviews motions made under Rule 12(c) of the Federal Rules of Civil Procedure in the same manner it would review a motion to dismiss for failure to state a claim upon which relief can be granted made under Rule 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Accordingly, to survive a motion for judgment on the pleadings a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The factual allegations of a pleading "must be enough to raise a right to

relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

### III.  Discussion

Plaintiff alleges seven claims for relief: (1) civil conspiracy against all defendants; (2) sexual harassment against all defendants; (3) intentional infliction of emotional distress against all defendants; (4) hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") against ODRC; (5) defamation per se against the individual defendants; (6) sex discrimination/harassment/retaliation in violation of Title VII against all defendants; and (7) sex discrimination and hostile work environment in violation the Ohio Civil Rights Act, Ohio Revised Code § 4112.02 against ODRC.

Defendants move for judgment on the pleadings on all Plaintiff's claims for relief. Defendants argue that Plaintiff's state law claims against ODRC are barred by sovereign immunity, that Plaintiff's state law claims against the individual defendants are barred by statutory immunity, and that Plaintiff has failed to failed to exhaust her administrative remedies with respect to her Title VII claims. Defendants' arguments are well taken.

**A.  State Law Claims Against ODRC**

ODRC argues that it enjoys immunity from Plaintiffs claims under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State.

U.S. Const. Amend. XI. Therefore, the Eleventh Amendment bars a suit against a state or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 97-98, 104 S.Ct. 900, 79

4

L.Ed.2d 67 (1984), *overruled in part on other grounds*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45; *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). ODRC is a state agency and therefore enjoys Ohio's sovereign immunity in federal court, unless waived by the state. *Turker v. Ohio Dept. of Rehab. and Corr.*, 157 F.3d 453, 459-60 (6th Cir. 1998). Ohio has not waived its sovereign immunity in federal court. *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) (citing *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir. 1982)).

Plaintiff argues, however, that ODRC "is not an instrumentality of the state when its employees act so obviously outside of the dictates of law." (ECF No. 17 at 7.) Without any explanation as to how these cases support her proposition, Plaintiff cites to "*Cooper v. School Employees Retirement Sys. of Ohio* (S.D.E.D. 1988), C-2-88-0060" and "*Jackson A&E Assoc., Inc. v. Pub. Emp. Retirement Sys.*, 2003 Ohio 7033." *Id.* While the Court was unable to find *Cooper* on any legal research database and Plaintiff did not attach a copy for the Court, it did find *Jackson* and that case explained *Cooper*:

> PERS [The Public Employees Retirement System] maintains that it is not a state agency or instrumentality of the state, and relies upon a federal case, *Cooper v. School Employees Retirement Sys. of Ohio* (S.D.E.D. 1988), Case No. C-2-88-0060, in which the court considered whether the School Employees Retirement System was an alter ego of the state, for purposes of diversity jurisdiction and Eleventh Amendment immunity. The court in *Cooper* concluded that the School Employees Retirement System was not an alter ego of the state, finding that it acts for the benefits of its members, rather than the state, and that its structure and operations more closely resembles a private pension fund rather than an agency of the state.

*Jackson A&E Assoc., Inc. v. Pub. Emp. Retirement Sys.*, No. 02AP-1218, 2003 Ohio 7033, 2003 Ohio App. LEXIS 6380, at *5 (Ohio Ct. App. Dec. 23, 2003).

5

*Cooper* and *Jackson* are clearly inapposite. That is, there is no contention in the case *sub judice* that ODRC closely resembles a private entity whose acts benefits its "members" rather than the state. Indeed, ODRC's structure and operations are clearly for the benefit of the state. Thus, neither *Cooper* nor *Jackson* are have any bearing on whether ODRC is entitled to Eleventh Amendment immunity.

Accordingly, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings as it relates to Plaintiff's state law claims against ODRC.

**B. State Law Claims Against Individual Defendants**

Plaintiff does not indicate whether she is suing the individual defendants in their official or their personal capacities. However, to the extent that Plaintiff is suing the individual defendants in their official capacity, they are immune under the Eleventh Amendment to the United States Constitution for the same reasons that ODRC is protected by this immunity because a suit against a state employee in his or her official capacity is the same as a suit against the State agency itself. *Printz v. United States*, 521 U.S. 898, 930-31 (1997) ("We have observed that 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.' " (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989)).

To the extent Plaintiff is suing the individual defendants in their personal capacity, those claims too fail. Individual state officials and employees enjoy immunity from state law causes of action pursuant to Ohio Revised Code § 9.86, which provides:

> Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any

civil action that arises under the laws of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith or in a wanton or reckless manner.

Ohio Revised Code § 2743.02(F) recognizes this immunity and vests the threshold determinations in the Ohio Court of Claims by providing:

A civil action against an officer or employee . . . that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.

As this Court has previously recognized, "[t]he Sixth Circuit has read §§ 9.86 and 2743.02(F) together to hold that a state employee is immune from state law claims until the Court of Claims has held that § 9.86 immunity is unavailable." *Nuovo v. Ohio State Univ.*, 726 F. Supp. 2d 829, 847-48 (S.D. Ohio July 16, 2010) (citing *Prior v. Mukasey*, No. 3:08CV994, 2008 U.S. Dist. LEXIS 100668, 2008 WL 5076821, at *2 (N.D. Ohio Nov. 21, 2008)). This means that, " '[u]ntil the Ohio Court of Claims determines that [the individual defendants] are not immune, there is no cause of action cognizable under Ohio law over which the district court can assert jurisdiction.' " *Id.* (quoting *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989)). Unless and until the individual defendants are found to have acted outside the scope of their employment by the Ohio Court of Claims, they are immune from suit on Plaintiff's state law claims. The Ohio Court of Claims has made no such determination here.

Thus, the Court **GRANTS** Defendants' for Judgment on the Pleadings as it relates to Plaintiff's state law claims against C.O. Foulk, C.O. Neininger, and C.O. Williams.

**C. Title VII Claims**

Defendants move for judgment on the pleadings on Plaintiff's Title VII claims based on her failure to exhaust her administrative remedies. "Before a plaintiff alleging discrimination under Title VII can bring suit in federal court, she must satisfy two administrative prerequisites: '(1) by filing timely charges of employment discrimination with the [Equal Employment Opportunity Commission ("EEOC")], and (2) receiving and acting upon the EEOC's statutory notices of the right to sue.' " *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (citing *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989); 42 U.S.C. § 2000e-(f)(1); *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 798, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)). Defendants argue that Plaintiff has failed to allege any fact showing that she exhausted her administrative remedies and that she received a notice of right to sue from the EEOC before filing this action.

In her memorandum in opposition, Plaintiff argues that she "filed a formal complaint with the Equal Employment Opportunity Commission in August of 2010. . . . [and that] [s]he received a "No Probable Cause" letter in September of 2010." (ECF No. 17 at 9.) Plaintiff claims that she then filed an "appeal request" and was told that her case had been administratively closed.

In their reply memorandum, Defendants posit that Plaintiff is confused about the agency with which she filed her complaint. As the complaint indicates, Plaintiff filed her complaint with the EEO Department of ODRC's Human Resources Department, not the EEOC. The document attached to the complaint is the document Plaintiff filed with the EEO Department of ODRC's Human Resources Department.

8

This Court agrees with Defendants that Plaintiff is confused about the agency with which she filed her discrimination complaint. Plaintiff failed to properly allege exhaustion in her complaint and did not to attach any document from the EEOC regarding her ability to file this suit. Pursuant to 42 U.S.C. § 2000e-5(e)(1), a charge is timely when the aggrieved filed with the EEOC within 180 days after the allegedly unlawful practice occurred. After an investigation, the EEOC will either file suit on behalf of a claimant or it will issue a right to sue letter. The right to sue letter is a condition precedent to filing suit in this Court. *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998). Plaintiff makes no allegation in her complaint, nor even any argument in her brief, that she has been issued a right to sue letter from the EEOC. Thus, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings as it relates to Plaintiff's Title VII claims.

**D. Alternative Request to Dismiss Without Prejudice**

In Plaintiff's memorandum in opposition, she asks that the Court deny Defendants' Motion for Judgment on the Pleadings, or alternatively, that "this court convert this Motion to one for dismissal without prejudice." (ECF No. 17 at 1.) This Court, however, is unaware of any procedural mechanism available to "convert" a parties' motion to something other than it is. Accordingly, the Court **DENIES** Plaintiff's request.

## IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings.  (ECF No. 12.)  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

<u>/s/ Gregory L. Frost</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**